# LEVIN-EPSTEIN & ASSOCIATES, P.C.
---
60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792-0048 • E: Jason@levinepstein.com

January 19, 2023

*Via Electronic Filing*
The Honorable Nicholas G. Garaufis, U.S.D.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   *Dawkins v. Restonic Sales, Inc.*
            Case No.: 1:22-cv-06624-NGG-LB

Dear Honorable Judge Garaufis:

      This law firm represents Defendant Restonic Sales, Inc. (the "Defendant") in the above-referenced matter.

      Pursuant to Your Honor's Individual Motion Practice Rules V(A)(2) this letter respectfully serves to respectfully request a pre-motion conference on Defendant's anticipated motion to dismiss (the "Motion to Dismiss") the Complaint, filed on October 31, 2022 [Dckt. No. 1] ("the Complaint", or the "*Compl.*"), by Plaintiff Elbert Dawkins (the "Plaintiff") pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(1) and 12(b)(6) (the "Motion to Dismiss").

      This letter further respectfully serves to respectfully an extension of time to answer or respond to the Complaint, pursuant to Your Honor's Individual Motion Practice Rules V(A)(3).

      As set forth more fully below, the instant action is demonstrative of the "potential for abuse of the ADA noted in numerous cases in districts throughout the country." *Access 4 All, Inc*, 2006 U.S. Dist. LEXIS 96742 at *34. The Complaint should be dismissed for three (3) reasons. First, Plaintiff has failed to state a claim for relief under Title III of the ADA. Second, Plaintiff's allegations of "a bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Third, Plaintiff has not – and cannot – establish the requisite "reasonable inference" of an intent to patronize the website located at https://restonic.com/ ("Defendant's Website").

      **I.**    **Summary of Relevant Facts**

      According to the operative Complaint, Plaintiff is a "visually-impaired and legally blind person[.]" [*Compl.* at ¶ 2].The Complaint does not allege whether Plaintiff has no vision at all, or has low vision. [*Id.*].

      The Complaint alleges that on an unspecified date, in an unspecified year, Plaintiff visited Defendant's Website.

      Of critical importance, Plaintiff does not allege that he genuinely intended to, or was actually prevented from, patronizing Defendant's Website. [*Id.*].

The Complaint vaguely identifies four (4) types of alleged barriers on Defendant's Website:

1. The lack of non-text features, which provides descriptive alternative text to graphic images. [*Id.* at ¶ 25].

2. The lack of label elements or title attributes for HTML fields. [*Id.* at ¶ 26].

3. Certain webpages contain the same descriptive HTML titles. [*Id.* at ¶ 27].

4. Certain webpages contain broken links. [*Id.* at ¶ 28].

The Complaint does not specify where these alleged barriers are located. Nor does the Complaint which of these barriers he encountered personally.[1] These are fatal flaws.[2]

Plaintiff is asserting two (2) claims for violations of: (i) Title III of the Americans with Disabilities Act, 42 U.S.C.A. § 12101, *et seq.*, (the "ADA"); and (ii) the Administrative Code of the City of New York § 8-107, *et seq.* (the "NYC Code"). [*Compl.* at ¶¶ 50-70]. Plaintiff is also asserting a third claim for declaratory relief. [*Id.* at ¶ 71-73].

The operative facts in Plaintiff's Complaint are substantially similar to 598 other complaints[3] filed in the Southern and Eastern Districts of New York by Plaintiff's counsel, Mark Rozenberg ("Attorney Rozenberg"), and elsewhere by self-proclaimed ADA "testers" that have inundated federal courts with questionable complaints in the last few years that have more to do with garnering attorneys' fees than ensuring access under the ADA.[4]

## II. Plaintiff's Failure to State a Claim for Relief Under Title III of the ADA Warrants Dismissal of the Complaint

To state a Title III claim, a plaintiff must do more than merely recite regulatory language. *Antolini v. Thurman,* 2021 WL 3115169, at *9 (S.D.N.Y. 2021) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 196 (2015)).

In the instant action, the Complaint rests on recitations of privately developed Web Content Accessibility Guidelines ("WCAG") 2.1, Level AA. Although various federal courts have adopted

---

[1] For example, the Complaint generally alleges that certain barriers present "problem[] for the visually impaired." [*See Compl.* at ¶¶ 26-28].
[2] District courts in this Circuit, and in other Circuits, have dismissed nearly identical pleadings filed by other "tester" plaintiffs for failing to establish actual or imminent injury sufficient to confer standing. *See e.g., Sarwar v. L.S.K., Inc.,* 2021 WL 4317161, at *3 (D.N.J. 2021); *see also Harty v. W. Point Realty, Inc.,* 28 F.4th 435 (2d Cir. 2022).
[3] A true and correct compendium of the 598 ADA-cases filed in this District by Attorney Rozenberg, as of September 26, 2022, is annexed hereto as **Exhibit "A"**.
[4] *See, e.g.*, *Access 4 All, Inc. v. Thirty E. 30th St., LLC*, 2006 U.S. Dist. LEXIS 96742 at *34-35 (S.D.N.Y. 2006). (citing *Doran v. Del Taco, Inc*., 2006 U.S. Dist. LEXIS 53551, at *15-16 (C.D. Cal. 2006)). (Recognizing "the ability to profit from ADA litigation," and rather than "informing the business of the violations and attempting to remedy them, lawsuits are filed, as pre-suit settlements…do not vest plaintiff's counsel with an entitlement to attorney's fees under the ADA.")

the WCAG 2.0[5] Level AA success criteria, formulaic statements of private industry guidelines are "plainly not sufficient to state a claim" under Title III of the ADA. *Omnicare, Inc.*, 575 U.S. at 196. None of the categories of alleged barriers in the Complaint are identified with a modicum of specificity, *to wit*: their locations or which Plaintiff personally encountered. [*Compl.* at ¶¶ 25-28]. These are fatal pleading defects.

### III.     Plaintiff Lacks Standing Because He Suffered No Injury-In-Fact

Standing is an integral part of the constitutional limitation that federal courts can hear only cases or controversies pursuant to Article III of the United States Constitution. *See Simon v. Eastern Kentucky Welfare Right Organization*, 426 U.S. 26, 41-42 (1976). Absent Article III standing, a federal court "lacks subject matter jurisdiction to hear the case and it must be dismissed." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015). "'[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 489-90 (1975), (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). A plaintiff bears the burden of meeting the "irreducible constitutional minimum of standing" by proving, *inter alia,* "…an injury in fact…which is (a) **concrete and particularized** and (b) **actual or imminent**, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, and citations omitted), (emphasis added).

Of critical importance, Plaintiff does not allege that he was actually prevented from, patronizing Defendant's Website. [*Compl.* at ¶ 22]. Assuming *arguendo,* the alleged technical violations identified in the Complaint exist, Plaintiff was not prevented from making a purchase from Defendant's Website, and thus, did not experience the requisite "concrete and particularized" harm necessary to establish Title III standing.

The Complaint states, in conclusory fashion, that Plaintiff "was attempting, but was but was unsuccessful, ***in reviewing the products***[,]" and that "Plaintiff intends to visit the Website in the near future ***if he can access the Website***." [*Compl.* at ¶¶ 25, 31]. At most, these claims amount to the sort of "informational" and "dignitary" harm that are insufficiently "concrete and particularized" to constitute an injury-in-fact. *See Gannon v. 31 Essex Street LLC, et al*, 2023 WL 199287, at *4 (S.D.N.Y. 2023) ("Article III does not grant a 'freewheeling power to hold defendants accountable for legal infractions'") (citing *Harty*, 28 F.4th at 443); *Harty,* 28 F.4th 435. (affirming District Court's dismissal of tester plaintiff's complaint, alleging informational injury); *Hernandez v. Caesars License Co., LLC,* 2019 WL 4894501, at *2-4 2019 WL 4894501 (D. N.J. 2019) ("'non-disclosure [of information] is not an injury in and of itself. Rather, plaintiff[] must show that an alleged non-disclosure actually harms them").

---

[5] "WCAG 2.0 guidelines are private industry standards for website accessibility developed by technology and accessibility experts. WCAG 2.0 guidelines have been widely adopted, including by federal agencies, which conform their public-facing, electronic content to WCAG 2.0 level A and level AA Success Criteria. 36 C.F.R. pt. 1194, app. A (2017). In addition, the Department of Transportation requires airline websites to adopt these accessibility standards. *See* 14 C.F.R. § 382.43 (2013). Notably, the Department of Justice has required ADA-covered entities to comply with WCAG 2.0 level AA (which incorporates level A) in many consent decrees and settlement agreements in which the United States has been a party."

### IV. Plaintiff Cannot Establish a "Reasonable Inference" of an Intent to Patronize Defendant's Website

In the case at bar, Plaintiff calls into question whether they have established the requisite "reasonable inference" of an intent to patronize Defendant's Website. *Access 4 All, Inc*, 2006 U.S. Dist. LEXIS 96742 at *34. In determining whether an ADA plaintiff has raised such an inference, the Second Circuit has instructed that courts should consider a variety of factors, including the proximity of the defendant's services to the plaintiff's home, the frequency of the plaintiff's past visits to defendant's public accommodation, plaintiff's occupation, plaintiff's demonstrated travel habits, and a plaintiff's serial litigation history. *Tozzer, Ltd*., 2018 WL 1872194 at *4 (citations omitted).

When considered alongside Plaintiff's vague allegations and serial litigation history[6], the Complaint simply fails to plausibly demonstrate a plausible "reasonable inference" of an intent to patronize, as required to establish standing under Title III. District courts in the Second Circuit, and in other Circuits, have dismissed nearly identical pleadings filed by other "tester" plaintiffs for failing to establish actual or imminent injury sufficient to confer standing. *See e.g., Sarwar v. L.S.K., Inc.,* 2021 WL 4317161, at *3 (D.N.J. 2021); *see also Harty,* 28 F.4th 435.

### V. Conclusion

For all of the foregoing reasons, it is respectfully submitted the Court schedule a pre-motion conference on Defendant's anticipated Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Thank you, in advance, for your time and attention to this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
Jason Mizrahi, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel. No.: (212) 792-0048
Email: Jason@levinepstein.com
*Attorneys for Defendant*

VIA ECF: All Counsel

Encl.

---

[6] "The more hotels sued by an individual ADA plaintiff, the less likely it is that the plaintiff will be able to demonstrate a plausible intention to return to each of those hotels in the 'imminent' future to enjoy its facilities." *Access 4 All, Inc.,* 2006 U.S. Dist. LEXIS 96742 at *33; *Laufer v. Dove Hess Holdings, LLC*, 2020 U.S. Dist. LEXIS 246614 (N.D.N.Y. 2020) *motion to certify appeal denied*, 2021 WL 365881 (N.D.N.Y. 2021) (taking judicial notice of carbon-copy ADA lawsuits filed by plaintiff in context of challenge to standing); *See also* Ex. A.